EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pedro Vélez Seguinot, etc.<br><br>Demandantes-Recurridos<br><br>vs.<br><br>Autoridad de Acueductos y Alcantarillados de P.R. etc.<br><br>Demandadados-Peticionarios<br><br>Municipio de Carolina y Admiral Ins. Co.<br><br>Terceros demandados | Certiorari<br><br>2005 TSPR 69<br><br>163 DPR _____ |

Número del Caso: CC-2003-85

Fecha: 18 de mayo de 2005

Tribunal de Apelaciones:

Circuito Regional VII Carolina – Fajardo

Juez Ponente:

Hon. Zaida Hernández Torres

Abogado de la Parte Peticionaria:

Lcdo. Carlos Martínez-Texidor

Abogado de la Parte Recurrida:

Lcdo. Carlos R. Iguina Oharriz

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pedro Vélez Seguinot,etc.

    Demandantes-recurridos

          vs.

Autoridad de Acueductos y
Alcantarillados de P.R. etc.

                    CC-2003-85    CERTIORARI

    Demandados-peticionarios

Municipio de Carolina y
Admiral Ins. Co.

    Terceros demandados

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de mayo de 2005

El 4 de mayo de 1999, Pedro Vélez Seguinot, su esposa Margarita Arrocho Maldonado y la sociedad legal de gananciales compuesta por ambos presentaron ante el Tribunal de Primera Instancia, Sala Superior de Carolina, una demanda de daños y perjuicios contra la Autoridad de Acueductos y Alcantarillados (en adelante A.A.A.), su aseguradora, American International Insurance Company of Puerto Rico (en adelante AIICO), y el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.).

En la referida demanda se alegó, en síntesis, que el 24 de septiembre de 1996

mientras los codemandantes transitaban en horas de la mañana, prudentemente y cumpliendo con las leyes de tránsito, por la Avenida Roberto Clemente del Municipio de Carolina, su automóvil cayó súbitamente en uno de los conductos de los registros de acueductos. Se adujo que el referido conducto estaba roto, sin tapa y sin contorno de cemento; alegaron, además, que el accidente había sido provocado por la exclusiva negligencia de los codemandados debido a que no mantuvieron y operaron la calle y el contorno adecuadamente ni colocaron rótulo alguno que advirtiese al público sobre la peligrosidad del lugar.

Luego de varios trámites procesales, el E.L.A. presentó ante el tribunal de instancia una moción de desestimación en la cual expuso que, luego de realizar la investigación correspondiente del caso, el Departamento de Transportación y Obras Pública le había informado que el lugar donde se alegaba que ocurrieron los hechos no estaba bajo la jurisdicción, control y mantenimiento del E.L.A. La parte demandante se allanó a dicha solicitud de desestimación. Conforme a lo anterior, el foro primario emitió sentencia parcial desestimando la demanda contra el E.L.A.

Posteriormente, la A.A.A. y AIICO presentaron ante el foro primario una demanda contra tercero en contra del Municipio de Carolina y su aseguradora, Admiral Insurance Company. En la misma se alegó, en síntesis, que la Avenida Roberto Clemente era propiedad y estaba bajo el control,

dominio, jurisdicción y mantenimiento del Municipio de Carolina. En virtud de lo anterior, se adujo que fue el Municipio quien actuó negligentemente al no mantener la mencionada carretera en condiciones de razonable seguridad. Se alegó, además, que los terceros demandados eran los que debían responder directamente a la parte demandante o, en la alternativa, a la parte demandada en la eventualidad de que el tribunal de primera instancia declarara con lugar la demanda contra ellos.

Habiendo sido pautada la vista en su fondo del caso para el 11 de diciembre, y previo a iniciarse la referida vista, los demandantes y el Municipio de Carolina--parte tercera demandada--llegaron a un acuerdo transaccional que puso fin a la controversia entre dichas partes, el cual fue aprobado por el foro primario en corte abierta. A los fines de plasmar por escrito la transacción efectuada, el 31 de enero de 2002 el tribunal de instancia emitió sentencia a esos efectos. A través de la misma, el foro primario condenó al Municipio a satisfacer la cantidad de veinticinco mil dólares ($25,000) como compensación total de todos los daños y perjuicios presentes y futuros sufridos por la parte demandante por motivo del accidente automovilístico al cual se refería la causa de acción.

Por otra parte, el 11 de febrero de 2002-- luego de celebrado el juicio en su fondo-- el tribunal de instancia emitió sentencia disponiendo finalmente del caso. A través de la misma, declaró con lugar la demanda en contra de

A.A.A. y su aseguradora, AIICO y en consecuencias las condenó a pagar $57,500.00 al señor Vélez Seguinot y $96,500.00 a la señora Arrocho Maldonado por los daños sufridos por ellos como resultado del accidente en que se vieron envueltos. Además, el foro primario le impuso a la parte demandada el pago de intereses a partir de la fecha de la presentación de la demanda, más el pago de costas, gastos, y honorarios de abogado. Ambas sentencias --esto es, la del 31 de enero y la del 11 de febrero de 2002-- fueron notificadas el 14 de febrero de 2002.

Resulta de particular importancia enfatizar el hecho de que no obstante la segunda sentencia haber sido efectivamente emitida el 11 de febrero de 2002-- la cual fecha se hizo constar en la sentencia propiamente-- en el volante de notificación de la misma, de fecha 14 de febrero de 2002, la secretaria del foro de instancia hizo constar, por error, que la sentencia era del 31 de enero de 2002, fecha de la primera sentencia emitida.

Oportunamente, el 25 de febrero de 2002, la A.A.A. y AIICO presentaron ante el tribunal de instancia una moción en solicitud de determinaciones de hechos adicionales de conformidad con la Regla 43.3 de las de Procedimiento Civil[1]. Esta moción fue declarada no ha lugar por el foro primario mediante resolución a esos efectos.

---

[1] En la moción de determinaciones de hechos adicionales la parte demandada indicó, entre otras cosas, que había quedado adversamente afectada por la sentencia emitida por

(Continúa...)

Posteriormente, el 1 de marzo de 2002 las mencionadas demandadas presentaron una moción de reconsideración ante el tribunal de instancia[2], solicitud que fue denegada por el referido foro. Inconforme con tal determinación, el 4 de abril de 2002 la parte demandada acudió, vía recurso de apelación, ante el Tribunal de Apelaciones[3]. El 17 de abril de 2002 la <u>parte demandante</u> presentó ante el foro apelativo intermedio una <u>moción de desestimación</u>, en la cual expuso <u>que el recurso de apelación de la parte demandada no se le había notificado a la parte tercera demandada quien era parte en el pleito</u>. En vista de ello, solicitó que se desestimara el recurso por no haber sido perfeccionado en tiempo. En virtud de la referida moción, el tribunal apelativo intermedio emitió una orden dirigida a la parte demandada para que mostrara causa por la cual no debía ser desestimado su recurso por falta de notificación a una de las partes en el pleito.

---

el foro primario el "<u>11 de febrero de 2002 y notificada a las partes el 14 de febrero de 2002</u>.

[2] Nuevamente, en su solicitud de reconsideración, la parte demandada hizo alusión a que la sentencia que declaró con lugar la demanda en el caso fue firmada "<u>el 11 de febrero de 2002 y archivada en autos copia de su notificación el 14 de febrero de ese mismo año</u>".

[3] En el Escrito de Apelación la parte demandada, al hacer referencia a la sentencia cuya revisión solicitaba, indicó que "<u>dicha sentencia fue dictada el día 11 de febrero de 2002 y se notificó y archivó copia en los autos del caso el día 14 de febrero de 2002</u>". Posteriormente, señaló que "<u>Se acompaña copia de la sentencia del 11 de febrero de 2002 y de su notificación</u>".

La parte demandada compareció ante el foro apelativo intermedio en cumplimiento de la mencionada orden.[4] El Tribunal de Apelaciones emitió sentencia desestimando el recurso; expresó en la misma que, según había indicado la parte demandante, carecía de jurisdicción para atender el recurso debido a que el mismo no había sido notificado a todas las partes en el pleito. Explicó que la sentencia dictada por el foro primario el 31 de enero de 2002 aprobando la estipulación transaccional no se había convertido en final porque no cumplió con lo requerido en la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5. En virtud de lo anterior, concluyó que las partes terceras demandadas tenían que ser notificadas debido a que continuaron siendo partes en el pleito hasta su adjudicación definitiva.

Oportunamente, la parte demandada presentó ante el foro apelativo intermedio una moción de reconsideración. Denegada la misma por el foro apelativo intermedio, y aún inconformes, las demandadas A.A.A. y AIICO recurrieron,

---

[4] En el escrito que radicaran, las demandadas alegaron que el Municipio de Carolina no era parte en el pleito debido a que la demanda contra terceros se había convertido en inoficiosa luego del acuerdo pactado entre la parte tercera demandada y los demandantes. Se adujo, además, que la alegación de que no se le notificó el escrito apelativo a la parte tercera demandada era inconsecuente y carente de fundamentos para la desestimación debido a que no estaba en controversia ni el referido acuerdo transaccional ni la responsabilidad del Municipio de Carolina.

vía *certiorari*[5], ante este Tribunal. El 19 de julio de 2002, este Tribunal emitió resolución <u>denegando</u> la antes mencionada solicitud de *certiorari*. Posteriormente, el 7 de agosto de 2002 --<u>y sin haberse remitido el mandato</u>[6]-- la parte demandada presentó ante este Tribunal un escrito titulado "Escrito Informativo y Solicitud de Desistimiento del Recurso sin Perjuicio". En el mismo expuso que cuando estaba en proceso de hacer la solicitud de reconsideración a la determinación del recurso de *certiorari* se percató de que no encontraba la notificación de la sentencia del 11

---

[5] En dicho recurso, las demandadas expusieron que la sentencia que puso fin al pleito fue emitida "...<u>el día 11 de febrero de 2002 y notificada el 14 de febrero de 2002</u>". Más adelante, haciendo referencia a la sentencia del 31 de enero de 2002, indicó: "Esta sentencia fue notificada el 14 de febrero de 2002. <u>Ese mismo día, 14 de febrero de 2002 se notificó otra sentencia del Honorable Tribunal de Primera Instancia de Carolina, dictada el 11 de febrero de 2002 declarando con lugar la demanda</u> condenando a los peticionarios a pagar a la parte demandante ciertas cantidades de dinero como se ha dicho antes...".

Posteriormente indica que "Es imprescindible señalar en este momento que <u>ambas sentencias fueron simultáneamente notificadas a las partes y que sus notificaciones fueron archivadas en los autos de este caso también el mismo día 14 de febrero de 2002</u>". Luego, repite que "<u>copia de la notificación de las dos (2) sentencias fue archivada en autos el 14 de febrero de 2002</u>.

Subsiguientemente, expone que "es decir, dicha sentencia que antes era parcial, se convirtió en final cuando <u>fueron registradas y notificadas el 14 de febrero de 2002 ambas sentencias</u>. Finalmente, esgrimen que "es importante volver a señalar que <u>la sentencia parcial dictada el 31 de enero de 2002 y la sentencia dictada el 11 de febrero de 2002 fueron notificadas y archivadas copias de su notificación el mismo día</u>.

[6] El mandato fue remitido el 9 de agosto de 2002.

de febrero de 2002.[7] En vista de lo anterior, indicó que en ese momento se había dado cuenta que la referida sentencia no había sido notificada a las partes conforme a derecho y, por consiguiente, no había comenzado a decursar el término para recurrir de la misma.

Ese mismo día la parte demandada presentó un escrito ante el foro primario. Mediante el referido escrito solicitó se notificara conforme a la ley la sentencia del 11 de febrero de 2002 y se archivara en autos copia de su notificación para que pudiera comenzar a decursar el término para acudir en revisión de la referida sentencia. Además, solicitó al foro primario que resolviera la demanda de terceros ya que ninguna de las sentencias dictadas resolvía la misma y la parte demandada no la había retirado ni había renunciado a la misma.

El 13 de agosto de 2002, la parte demandante presentó ante el foro primario su oposición al antes mencionado escrito presentado por la parte demandada. Alegó que la sentencia del 11 de febrero de 2002 había sido efectivamente notificada el 14 de febrero de 2002. Se expuso que la sentencia había sido enviada a todas las partes en la fecha correcta en que se archivó en autos copia de la misma. Indicó, además, que el error en la notificación al indicar que la sentencia había sido

---

[7] Ello en vista del hecho que, conforme expresáramos anteriormente, en el volante de notificación de la sentencia emitida el 11 de febrero de 2002 se hizo constar, por error, la fecha del 31 de enero de 2002.

emitida el 31 de enero de 2002 en vez del 11 de febrero de 2002 fue un mero error oficinesco, que ocurrió por inadvertencia de la secretaria del tribunal; error que no afectó el derecho de la parte demandada de acudir al foro apelativo intermedio, como lo había así hecho.

Así las cosas, el 26 de agosto de 2002, el tribunal de instancia emitió una notificación enmendada de la sentencia del 11 de febrero de 2002. El foro primario, en la referida notificación, "aclaró" que la misma era sólo a los fines de corregir la fecha en que fue emitida la sentencia.

Tres días más tarde, la parte demandada presentó ante este Tribunal un nuevo escrito titulado "Solicitud de Desistimiento del Recurso de Certiorari por Académico". A través del mismo, alegó que la solicitud de desistimiento presentada ante este Tribunal era académica toda vez que el foro primario ya había emitido nuevamente la notificación de la sentencia del 11 de febrero de 2002 y, por tal razón, el término para recurrir de la misma había comenzado nuevamente a decursar, conforme a la Regla 46 de las Procedimiento Civil, el 26 de agosto de 2002.

A raíz de esta nueva notificación, el 5 de septiembre de 2002 A.A.A. y AIICO presentaron nuevamente una moción solicitando determinaciones de hechos adicionales ante el foro primario, la cual fue declarada no ha lugar. Posteriormente, el 10 de septiembre de 2002 la parte demandada, también, radicó una segunda moción de

reconsideración ante el tribunal de instancia, la cual también, fue declarada no ha lugar.

El 10 de octubre de 2002 los demandados presentaron un nuevo recurso de apelación ante el Tribunal de Apelaciones. Además de alegarse los mismos planteamientos de error que en la primera apelación, se indicó que como la sentencia del 11 de febrero de 2002 había sido archivada en autos conforme a derecho el 26 de agosto de 2002, a partir de esa fecha fue que comenzó a transcurrir el término para acudir en apelación.

El 27 de noviembre de 2002, luego de que la parte demandante presentara una moción de desestimación al nuevo recurso de apelación, el foro apelativo intermedio emitió sentencia. Nuevamente el Tribunal de Apelaciones desestimó el recurso por falta de jurisdicción. Concluyó el foro apelativo intermedio que la notificación del 26 de agosto de 2002 sólo constituyó una enmienda N*unc Pro Tunc* para enmendar un defecto de forma, a saber la constancia de la verdadera fecha en que la sentencia fue emitida.

Insatisfecha, la parte demandada acudió, el 11 de febrero de 2003 --vía *certiorari* --ante este Tribunal, señalando que había incidido el Tribunal de apelaciones:

> ...al decretar que carecía de jurisdicción para entender en el recurso presentado por esta parte concluyendo erróneamente que la sentencia dictada por el Honorable Tribunal de Instancia, Sala Superior de Carolina el 11 de febrero de 2002 y no notificada y archivada en autos copia de su notificación el 26 de agosto de 2002.

Como resultado de este error incurrió en error de forma suplementaria el Honorable Tribunal de Circuito de Apelaciones al determinar que el término de apelación jurisdiccional comienza a decursar a partir de la fecha en que se dicta la sentencia y no a partir de la fecha en que se archiva en autos copia de su notificación.

...al concluir erróneamente que la notificación de la sentencia del 11 de febrero de 2002 conforme a las disposiciones de ley aplicables y la cual fue archivada en autos copia de su notificación el día 26 de agosto de 2002 sólo corregía un error de forma que constituye una enmienda "Nunc Pro Tunc" y por consiguiente no tuvo el efecto de que comenzara a decursar el término apelativo jurisdiccional.

...al desestimar el recurso de apelación ya que la parte demandante-recurrida estaba impedida de solicitar desestimación porque esto constituía violación a la doctrina de la ley del caso.

...al desestimar el escrito de apelación por falta de jurisdicción y no devolver el caso al Honorable Tribunal de Instancia para que adjudicara la demanda de terceros radicada por esta parte en contra de los terceros demandados, Municipio de Carolina y Admiral Insurance Company, lo que implica que no hay constancia de un archivo de notificación de una sentencia final en el caso que nos ocupa.

Expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

I

Como es sabido, en "una sentencia se adjudican las controversias habidas en un pleito y se definen los derechos de las partes involucradas". Falcón v. Maldonado, 138 D.P.R. 983, 989 (1995); Cárdenas Maxán v. Rodríguez,

119 D.P.R. 642, 656 (1987). Una vez se dicta una sentencia, las Reglas de Procedimiento Civil rigen lo referente a las formalidades y procedimientos que se deben cumplir para poder presentar un recurso de apelación. Específicamente a esos efectos, la Regla 53.1(c)[8] de las de Procedimiento Civil dispone que:

> El recurso de apelación deberá ser presentado en la forma antes dispuesta, dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de

---

[8] La Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII, también rige lo referente a la presentación de los recursos de apelación. Esta Regla dispone que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, incluyendo el Tribunal de incluyendo el Tribunal de Distrito durante el proceso de su abolición, <u>se presentarán dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia. En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico sean parte en un pleito,</u> el recuso de apelación se formalizarán, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta (60) días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.

apelación en la forma antes dispuesta y dentro del término jurisdiccional de sesenta (60) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.[9]

Según establece la antes citada Regla, el término para acudir al foro apelativo intermedio es jurisdiccional. Pellot v. Avon Mirabella, Inc., res. el 7 de agosto de 2003; Véase, además: Hiram Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, LexisNexis, San Juan, P.R., 2001, pág. 61. A tales efectos, este Tribunal ha indicado que el incumplimiento con el referido término es fatal debido a que el mismo es improrrogable. Salinas v. S.L.G., res. el 13 de noviembre de 2003, 2003 T.S.P.R. 165. Además, hemos señalado que este término, contrario a uno de cumplimiento estricto, no admite ser extendido por justa causa. Martínez, Inc. v. Abijoe Realty Corp., 151 D.P.R. 1, 7 (2000); Arriaga v. F.S.E., 145 D.P.R. 122, 131 (1998). Es decir, este término transcurre inexorablemente y el tribunal no tiene jurisdicción para entender en un recurso presentado fuera del mismo no importa las consecuencias procesales que su expiración prorrogue. Véanse, Sánchez Martínez, *op.cit.*, pág. 60; Rafael Hernández Colón,

---

[9] Los municipios y sus funcionarios no cualifican como instrumentalidades del Estado Libre Asociado y, por tal razón, les aplica el término de treinta (30) días y no el de sesenta (60) al recurso de apelación. Bco. Bilbao v. Mun. De Vega Baja, res. el 27 de abril de 2001, 2001 T.S.P.R. 60; Alcalde de San Juan v. Asamblea Municipal, 132 D.P.R. 820 (1993).

Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, Michie, San Juan, P.R., 1997, pág. 154-155.

Es debido al carácter fatal de este término que hemos indicado que es "imprescindible la pronta y correcta notificación" de las sentencias ya que según dispone la Regla 53.1, el mismo comienza a decursar a partir del archivo en autos de copia de la notificación. Véase: Martínez Inc. v. Abijoe Realty Corp., ante.

Específicamente, las Reglas de Procedimiento Civil imponen este deber de notificar las sentencias cuanto antes a todas las partes en el pleito y archivar en autos copia de la constancia de la notificación al Secretario del Tribunal. Las Reglas 65.3[10] y 67.2[11] de Procedimiento

---

[10] La Regla 65.3 dispone en lo aquí pertinente que:

> (a) Inmediatamente después de archivarse en autos copia de una orden o sentencia, el secretario notificará tal archivo a todas las partes que hubieren comparecido en el pleito en la forma preceptuada en la Regla 67. El depósito de la notificación en el correo será aviso suficiente a todos los fines para los cuales se requiera por estas reglas una notificación del archivo de una orden o sentencia.

> (c) El secretario hará constar en la copia de la constancia de la notificación que una a los autos originales la fecha y forma en que se hizo la notificación y la persona o personas notificadas.

[11] La Regla 67.2 dispone en lo aquí pertinente que:

> Siempre que una parte haya comparecido representada por abogado, la notificación se hará al abogado, a menos que el tribunal ordene que la notificación se haga a la parte misma. La

(Continúa...)

Civil, 32 L.P.R.A. Ap. III R. 65.3 y 67.2, establecen la forma en que se llevará a cabo toda notificación. Este Tribunal ha señalado que cuando el secretario va a notificar a las partes utilizando el correo, se tiene que notificar a los abogados a la vez, y correctamente, a sus direcciones conocidas en autos. Rodríguez Mora v. García Lloréns, 147 D.P.R. 305,310 (1998); Véase, además: Cuevas Segarra, ante, pág. 1146.

Por su parte, la Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III R.46, establece específicamente cuáles son las obligaciones del Secretario del Tribunal con respecto a las notificaciones. A esos efectos la referida regla dispone, en lo aquí pertinente, que:

> Será deber del secretario notificar a la brevedad posible dentro de las normas que fije el Tribunal Supremo, las sentencias que dicte el tribunal, archivando en autos copia de la sentencia y de la constancia de la notificación y registrando la sentencia. La anotación de una sentencia en el Registro de Pleitos y Procedimientos constituye el registro de la

notificación al abogado o a la parte se hará entregándole copia o remitiéndosela por correo a su última dirección conocida, o de ésta no conocerse, dejándola en poder del secretario del tribunal. Entregar una copia, conforme a esta regla, significa ponerla en manos del abogado o de la parte, o dejarla en su oficina en poder de su secretaria o de otra persona a cargo de la misma; o, si no hubiere alguien encargado de la oficina dejándola en algún sitio conspicuo de la misma, o si la oficina estuviere cerrada o la persona a ser notificada no tuviere oficina, dejándosela en su domicilio o residencia habitual en poder de alguna persona que no sea menor de 18 años que resida allí. la notificación por correo quedará perfeccionada al ser depositada en el correo.

sentencia. <u>La sentencia no surtirá efecto hasta archivarse en autos copia de su notificación y el término para apelar empezará correr a partir de la fecha de dicho archivo</u>[12].

Surge de lo anterior que el Secretario tiene la obligación, entre otras cosas, de notificar la sentencia y archivar en autos copia de la constancia de la notificación. Con respecto a este último deber hemos señalado que el archivo en autos de copia de la notificación [13] "constituye la constancia oficial de la notificación que la ley requiere" y, por su importancia "no es ni puede ser un acto caprichoso del secretario." <u>Asociación Cooperativa del Falansterio</u> v. <u>Navarro</u>, 70 D.P.R. 929, 932 (1950).

En cuanto al deber de la notificación[14] hemos indicado que "no es un mero requisito impuesto por las Reglas de

---

[12] La Regla 46 fue enmendada recientemente por la Ley Núm.40 del 10 de enero de 1999 a los efectos de indicar que si la fecha del archivo en autos de copia de la notificación era distinta a la fecha del depósito en el correo de dicha notificación se entendería que el término para presentar el recurso comenzaría a contarse a partir de la fecha del depósito en el correo. <u>Román</u> v. <u>Kmart Corp.</u>, 151 D.P.R. 731 (2000); <u>Martínez Inc.</u> v. <u>Abijoe Realty Corp.</u>, ante.

[13] Este deber es un acto ministerial del secretario del tribunal de hacer constar en el expediente original de un caso, la fecha y el modo en que el dictamen judicial de que se trate ha sido notificado a las partes. Sánchez Martínez, ante, pág. 76.

[14] Así en la notificación de la sentencia se consignan tres hechos y tres fechas distintas. A saber, que se dicto la sentencia, que se registro y que se archivo una copia en los autos del caso y la de la notificación de estos hechos a las partes. Las tres fechas son: la de la sentencia, la
(Continúa...)

Procedimiento Civil." <u>Martínez Inc.</u> V. <u>Abijoe Realty Corp.</u>, ante, citando a <u>Falcón</u> v. <u>Maldonado</u>, ante, pág. 989. En cambio hemos señalado "la imperiosidad del mismo debido al efecto que tiene dicha notificación sobre los procedimientos posteriores a la sentencia." Ibid.

Refiriéndonos específicamente a la importancia de una notificación correcta hemos sido enfáticos en que "es característica imprescindible del debido proceso de ley". <u>Rodríguez Mora</u> v. <u>García Lloréns</u>, ante, pág. 309; Véanse, además, <u>Medio Mundo, Inc.</u> v. <u>Rivera</u>, res. el 8 de junio de 2001, 2001 T.S.P.R. 85; Véase, además: José Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, Tomo II, Publicaciones J.T.S., San Juan, P.R., 2000, pág. 762. Además, hemos señalado que es "parte integral de la actuación judicial" y "requisito *sine qua non* de un ordenado sistema judicial". <u>Caro Ortiz</u> v. <u>Maldonado</u>, res. el 11 de febrero de 2003, 2003 T.S.P.R. 11; Véase, además: Cuevas Segarra, ante, pág. 1138.

En reiteradas ocasiones hemos expresado que el <u>propósito que sirve la notificación es proteger "el derecho de procurar la revisión judicial de la parte afectada por un dictamen a quo adverso</u>." Véase: <u>Hosp. Dr. Domínguez</u> v. <u>Ryder Memorial Hospital</u>, res. el 4 de marzo de 2004, 2004 T.S.P.R. 35; <u>Martínez</u> v. <u>Abijoe</u>, res. el 12

_____

del archivo de la copia en los autos del caso y la de la notificación de estos hechos a las partes. Sánchez Martínez, ante, pág. 79.

de mayo de 2000, 2000 T.S.P.R. 73. Este propósito queda reiterado por el hecho de que "si no se cumple con el trámite de notificación de las sentencias, éstas no surtirán efecto alguno ni podrán ser ejecutadas." Falcón Padilla v. Maldonado Quirós, ante; Pueblo v. Hernández Maldonado, 129 D.P.R. 472 (1991). Véase, además: Cuevas Segarra, ante, pág. 762.

En ocasión de interpretar las consecuencias que puede tener un error oficinesco cometido por el personal del tribunal en la notificación señalamos en Rodríguez Mora v. García Lloréns, ante, que los mismos no pueden afectar adversamente derechos de las partes. Véase: Sánchez Martínez, ante, pág.90.

Específicamente en Rodríguez Mora v. García Lloréns, ante, indicamos que el error de notificar una sentencia a la dirección errónea del abogado de una parte habiéndose suministrado la dirección correcta equivalía a que no se hubiese emitido notificación alguna de la sentencia. En este caso señalamos que este error oficinesco que requería la emisión de una ulterior notificación enmendada de sentencia, no podía generar la anomalía de crear dos (2) términos apelativos jurisdiccionales, con las consabidas ventajas y desventajas que eso conllevaba. Ibid. A tales efectos, el punto de partida para comenzar a contar el plazo de la apelación era la segunda notificación.

Sin embargo, hemos indicado que existen errores en la notificación que no tienen el efecto de interrumpir el

término dispuesto para instar los remedios postsentencia. Así, por ejemplo, este Tribunal en <u>Barletta</u> v. <u>Tribunal Superior</u>, 100 D.P.R. 690, 693 (1972), determinó que aunque "constituye la mejor práctica que los secretarios de las distintas salas del tribunal de primera instancia incluyan con cada notificación, copia de la sentencia, orden resolución u otra actuación del tribunal que deba ser notificada a alguna parte", <u>el no enviarla no afecta el cómputo del plazo apelativo</u>.

Por otra parte, la Regla 49.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.1, rige lo referente a la autoridad [15] que tienen los tribunales de corregir los errores de forma[16]. La antes citada Regla 49.1[17], dispone en lo pertinente que:

---

[15] Este Tribunal ha reconocido que dicha facultad no emana sólo de la referida Regla 49.1, sino que, también, es un poder inherente que tienen todos los tribunales. <u>León García</u> v. <u>Rest. El Tropical</u>, res. el 7 de junio de 2001, 2001 T.S.P.R. 81; <u>Security Insurance Co.</u> v. <u>Tribunal Superior</u>, 101 D.P.R. 191, 203 (1973). Otro error que también conlleva la nulidad de la notificación[15] es cuando se notifica a un abogado y no a todos, como sucede cuando se notifica a un abogado que represento a la parte pero que ya no lo representa por haber renunciado antes a su representación legal y habérsele aceptado la renuncia. Ante estas circunstancias la notificación también se considera ineficaz, a no ser que también el nuevo abogado haya sido notificado o que la parte misma haya sido notificada si es que el término para anunciar nueva representación expiro sin que la parte hubiese cumplido. Sánchez Martínez, ante, pág. 91-92.

[16] Este Tribunal ha actuado con liberalidad en la aplicación de esta doctrina de la subsanación o corrección de errores ocurridos por inadvertencia u omisión. <u>Security Insurance Co.</u> v. <u>Tribunal Superior</u>, ante; Véase: Cuevas Segarra, ante, pág. 781.

Los errores de forma[18] en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. Durante la tramitación de una apelación o un recurso de *certiorari*, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación y, posteriormente, sólo podrán corregirse con permiso[19] del tribunal de apelación.

Surge de esta disposición estatutaria que los tribunales pueden corregir en cualquier momento todo error de forma [20] que surja no sólo en una sentencia, sino, además, aquellos que surjan en órdenes u otras partes del expediente. En ocasión de explicar cuáles son los errores

---

[17] Esta disposición estatutaria tiene su equivalente en la Regla 60 (a) de Procedimiento Civil Federal León García v. Rest.El Tropical, ante. Véase: Cuevas Segarra, ante, pág. 781.

[18] En el sistema federal a este tipo de error, bajo la regla de Procedimiento Civil equivalente, se le conoce como "clerical mistake". S.L.G. Coriano-Correa v. K-Mart Corp., res. el 29 de junio de 2001, 2001 T.S.P.R. 97. Véase: Wright, Miller & Kane, 11 Federal Practice and Procedure, Civil 2d., sec. 2854, p. 239.

[19] Hemos señalado que este permiso que requiere la Regla para poder corregir una enmienda de forma una vez se eleva el expediente del caso sólo aplica cuando este Tribunal resuelve entrar en los méritos del caso y expide el auto. Insurance Co. Of P.R. v. Tribunal Superior, 100 D.P.R. 405, 412 (1972).

[20] Un error de forma es un error en cuanto a lo que se expresa en el documento de que se trata. Sin embargo el referido error no necesariamente tiene que aparecer reflejado en el documento. Rafael Hernández Colon, ante, pág. 312.

de forma, este Tribunal ha señalado que estos errores[21] son aquellos que ocurren "por inadvertencia u omisión, o por errores mecanográficos, o que no puedan considerarse van a la sustancia de la sentencia, orden o resolución, ni que se relacionan con asuntos discrecionales". Véase: S.L.G. Coriano-Correa v. K-Mart Corp., ante. Véanse, además, Sánchez Martínez, *op.cit*, pág. 129.

Asimismo hemos establecido que no procede corregir un error al amparo de esta disposición estatutaria cuando el mismo constituye un error de derecho o cuando existe una controversia que trate sobre una interpretación de Ley[22]. S.L.G. Coriano-Correa v. K-Mart Corp., ante.

En S.L.G. Coriano-Correa v. K-Mart Corp., ante, este Tribunal ejemplificó una serie de errores que pueden ser corregidos bajo la Regla 49.1. A esos efectos señalamos que se pueden enmendar en cualquier momento "errores de forma que aparezcan de los récords del tribunal", y

---

[21] Entre los errores de forma más comunes, se encuentran los errores mecanográficos, los errores de cómputos matemáticos en que no este involucrada la discreción del Tribunal sentenciador, los errores en nombres de personas o lugares, los errores de fechas y los errores de números o cifras. Sánchez Martínez, ante, pág. 129. Véanse, además, Hernández Colon, ante, pág. 313; Cuevas Segarra, ante, pág.781.

[22] Este Tribunal ha establecido que aunque se pueden corregir cálculos matemáticos al amparo de la Regla 49.1, la misma no se puede utilizar para corregir un cálculo cuando la controversia trate sobre una cuestión interpretación de Ley. S.L.G. Coriano-Correa v. K-Mart Corp., ante.

"errores del secretario del tribunal [23] al anotar la sentencia". Además, indicamos que se puede utilizar la Regla 49.1 "para adicionar al reconocimiento del derecho de propiedad la condena de entregar los frutos, para dar una descripción completa en la sentencia de la propiedad disputada, y para conceder costas en la sentencia cuando éstas se reconocen en la opinión". (citas omitidas). *Ibid.* Por último, señalamos que "si el derecho a cierto remedio está claramente sostenido por el récord, la omisión en concederlo es subsanable", también, mediante este tipo de enmienda. *Ibid.*

Este Tribunal ha reiterado que las enmiendas encaminadas a corregir este tipo de error son de naturaleza *Nunc Pro Tunc*. Es decir, las mismas se retrotraen a la fecha de la sentencia o resolución original. S.L.G. Coriano-Correa v. K-Mart Corp., ante. Véanse, además, Sánchez Martínez, ante, pág. 129; Rafael Hernández, pág. 312; Cuevas Segarra, ante, pág. 781.

En el presente caso, como hemos visto, la sentencia emitida contenía la fecha correcta de su emisión, esto es, el 11 de febrero de 2002. Por un error del secretario del tribunal de instancia, se hizo constar en el volante de notificación de la misma que ésta había sido emitida el 31

---

[23] Vale la pena señalar que la regla 49.1 permite que se corrijan errores de forma cometidos no sólo por el tribunal sino, también, aquellos cometidos por la secretaría del mismo. Véase: Wright, Miller & Kane, ante, p. 239.

de enero de 2002. No hay duda que se trata de un <u>mero error oficinesco</u> en la referida notificación, ocurrido por inadvertencia, <u>que no afectó la sustancia de la sentencia emitida ni los derechos de las partes, en específico, de los demandados</u>. La <u>mejor evidencia</u> de ello constituye el hecho de que éstos acudieron, en tiempo, ante el Tribunal de Apelaciones en revisión de la sentencia emitida el 11 de febrero de 2002, recurso que fue desestimado por la sencilla razón de que los demandados no notificaron a todas las partes en el pleito con copia del recurso. Por otro lado, <u>no</u> podemos ignorar las expresiones que en varias ocasiones hicieron los demandados en el referido recurso a los efectos de que la sentencia había sido emitida el 11 de febrero de 2002 y notificada el 14 de febrero de ese mismo año.

II

Con ello en mente atendemos los señalamientos de error de los demandados en el presente recurso. En sus primeros dos señalamientos, los codemandados peticionarios indican que el Tribunal de Apelaciones erró al decretar que carecía de jurisdicción para atender su recurso de apelación; ello por entender que el término para recurrir ante el foro apelativo intermedio no comenzó a decursar hasta que se notificó efectivamente la sentencia del 11 de febrero de 2002, a través de la notificación enmendada del 26 de agosto de 2002.

Argumentan las peticionarias que la sentencia del 11 de febrero de 2002 nunca fue notificada a través de la primera notificación del 14 de febrero de 2002. En virtud de lo anterior, alegan que no podía ser enmendada *Nunc Pro Tunc* una notificación inexistente ni tampoco podía concluirse que tal omisión por parte de la secretaría del tribunal era un mero error oficinesco. <u>No les asiste la razón; veamos por qué</u>.

En el presente caso <u>no</u> existe controversia en cuanto a que se <u>emitieron dos sentencias diferentes</u>, una el 31 de enero de 2002 y la otra el 11 de febrero de 2002, <u>las cuales fueron enviadas simultáneamente a todos los abogados de las partes en el pleito a través de dos sobres separados</u>. Tampoco existe controversia con respecto a que <u>todos los abogados de las partes recibieron los referidos sobres conteniendo cada uno de ellos copia de las respectivas sentencias con una copia de una notificación</u>[24].

---

[24] En lo pertinente al asunto ante nuestra consideración ambas notificaciones leían como sigue:

> El secretario que suscribe notifica a usted que este tribunal ha emitido sentencia en el caso de epígrafe con fecha 31 de enero de 2002, que ha sido debidamente registrada y archivada en los autos de este caso, donde podrá usted enterarse detalladamente de los términos de la misma.
> Y, siendo o representando usted la parte perjudicada por la sentencia, de la cual puede establecerse recurso de apelación, dirijo a usted esta notificación, habiendo archivado en los autos de este caso copia de ella con fecha de 14 de febrero de 2002.

(Continúa...)

Sólo existe controversia con respecto a si la copia de la notificación que se adjuntó con la sentencia del 11 de febrero de 2002 constituyó una notificación adecuada de la referida sentencia o si la misma constituyó una notificación defectuosa debido a que contenía un error al indicar la fecha en que había sido emitida la sentencia.

Como expresamos anteriormente, la notificación sirve un propósito lógico y sabio. A saber, "brinda a las partes la oportunidad de advenir en conocimiento real de la determinación tomada a la vez que otorga a las personas cuyos derechos pudieran verse transigidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley". Véase: Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 D.P.R. 24, 34 (1996).

Luego de un estudio exhaustivo y minucioso del expediente del caso encontramos, repetimos, múltiples instancias en las cuales los propios peticionarios validaron el hecho de que fueron efectivamente notificados de la sentencia del 11 de febrero de 2002, notificada el 14 de febrero de 2002 [25]. Peor aún, no es hasta que

---

Vale la pena destacar el hecho de que las iniciales o firma de la secretaria auxiliar, Liz A. Villegas, que aparece en estas notificaciones era distinta en ambos documentos.

[25] Sirve también para sustentar el hecho de que la sentencia fue notificada efectivamente el 14 de febrero de 2002, el hecho de que la copia de la propia sentencia del 11 de febrero de 2002 contiene un ponche al final que indicaba 14 de febrero de 2002. El mismo está localizado, debajo de la firma de la juez Sonrise Ramos Soler, y

(Continúa...)

transcurrieron aproximadamente seis meses de la notificación del 14 de febrero de 2002 y hasta que este Tribunal declaró no ha lugar su recurso de certiorari que las peticionarias supuestamente se percatan del referido error.

En vista de lo anterior es forzoso concluir que la notificación fue correcta al cumplir con el referido propósito y que la parte demandada fue debidamente notificada aunque el volante contenía un error. Ello, repetimos, quedó evidenciado por el hecho de que los peticionarios presentaron su recurso de apelación dentro del término que dispone la Regla 53.1 de Procedimiento Civil.

Resolvemos que las peticionarias fueron debidamente notificadas a través de la notificación del 14 de febrero de 2002 y, por consiguiente, la notificación del 26 de agosto de 2002 fue meramente una enmienda formal para hacer constar correctamente en el récord del foro primario la fecha en que había sido firmada la sentencia; esto es, se trata de un mero error oficinesco que podría ser enmendado *Nunc Pro Tunc*.

Si bien es cierto que en Rodríguez Mora v. García Lloréns, ante, señalamos que errores oficinescos no pueden afectar adversamente a las partes, en ese caso lo hicimos

_____

aparece junto al ponche del nombre de la Secretaria Auxiliar del Tribunal, Liz A. Villegas, y su firma o iniciales.

ante la <u>situación de hechos particular de aquel pleito</u> en el cual no se notificó a la dirección correcta de uno de los abogados de las partes aunque la misma constaba en autos. En aquel caso indicamos que la referida notificación fue inexistente y por tal razón no podía ser subsanada posteriormente por una notificación enmendada de sentencia.

Es correcto que en ese caso indicamos que una notificación enmendada de sentencia no podía generar la anomalía de crear dos (2) términos apelativos jurisdiccionales, con las consabidas ventajas y desventajas que eso conllevaba. Sin embargo, esto también lo expresamos en el contexto específico de aquel pleito en el cual, si se permitía la referida enmienda, iban a haber dos términos, a saber uno para la parte que recibió la primera notificación y otro para la parte a cuyo abogado no se notificó a su dirección correcta y, por tal razón, tuvo que ser notificado mediante la segunda notificación.

<u>Distinta es la situación en el presente caso</u>. En este caso se notificó efectivamente a todos los abogados de las partes simultáneamente en el correo por lo que la notificación enmendada no creó la anomalía de establecer dos términos jurisdiccionales diferentes para ambas partes. Además, en este caso <u>no</u> se afectó en forma alguna el derecho de las partes de acudir al foro apelativo.

En virtud de lo anterior, la notificación enmendada emitida por el foro primario fue hecha con el propósito de

corregir un defecto de forma que constaba en el expediente del caso cometido por el secretario del tribunal lo que está permitido, no sólo por la Regla 49.1 antes esbozada, sino, además, como poder inherente que tiene todo tribunal.

A base de lo antes expuesto, concluimos que no existe argumento jurídico alguno que nos persuada a reconocer que la notificación del 14 de febrero de 2002 de la sentencia del 11 de febrero fue nula. Ciertamente cometió un error la Secretaría del Tribunal de Primera Instancia al enviar una notificación con la fecha incorrecta en la cual la sentencia había sido emitida pero ese error no afectó derechos de las partes ni hizo que la notificación fuera defectuosa debido a que no había informado efectivamente a las partes del comienzo del término para poder acudir en revisión de la misma.

En vista de lo anterior, resolvemos que no erró el Tribunal de Apelaciones al decretar que carecía de jurisdicción debido a que no se había presentado el recurso de apelación dentro del término dispuesto en ley para ello. Habiendo determinado que el foro apelativo intermedio carecía de jurisdicción para atender el recurso resulta innecesario discutir los restantes señalamientos de error.

III

Por los fundamentos que anteceden, procede la <u>confirmación</u> de la sentencia emitida por el Tribunal de Apelaciones, desestimando el recurso de apelación radicado ante dicho foro judicial por las peticionarias, A.A.A. y AIICO.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pedro Vélez Seguinot,etc.

    Demandantes-recurridos

        vs.

Autoridad de Acueductos y
Alcantarillados de P.R. etc.

                              CC-2003-85    CERTIORARI

    Demandados-peticionarios

Municipio de Carolina y
Admiral Ins. Co.

    Terceros demandados


SENTENCIA

San Juan, Puerto Rico, a 18 de mayo de 2005


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin Opinión escrita. El Juez Asociado señor Rivera Pérez no interviene.


                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo